**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HEATHER GILLESPIE and ANGELA | ) | |
| CINSON, individually and on behalf | ) | |
| of all similarly situated individuals, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 04 C 8299 |
| | ) | |
| v. | ) | |
| | ) | |
| TRANS UNION, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Heather Gillespie and Angela Cinson have sued Trans Union, LLC on behalf of themselves and all others similarly situated. They allege that Trans Union violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681g(a)(1) & 1681e(a), by failing to disclose information that was allegedly part of their consumer files (Count 1) and by not maintaining reasonable procedures to avoid violations of §1681c (Count 2). Trans Union has moved for summary judgment. For the following reasons, the Court grants Trans Union's motion.

**Facts**

Trans Union is a credit reporting agency (CRA) that gathers consumer credit information and provides it to businesses in connection with credit transactions. When a furnisher of credit information sends Trans Union information about a delinquent account, Trans Union requires the furnisher to include a "date of delinquency," a date that is 180 days after the date of the delinquency "which immediately preceded the collection activity, charge to profit and loss, or similar action." *See* 15 U.S.C. § 1681c(c)(1). Trans Union uses the date of delinquency, along

with other information, to calculate a "Purge Date," which is used to determine when an account

should be removed from a consumer's credit report.[1]

In 2004, plaintiff Cinson requested a file disclosure from Trans Union under §

1681g(a)(1). Trans Union responded by providing a disclosure that included records pertaining

to delinquent accounts with Sears and Sherman Acquisitions but did not include the "date of

delinquency" or "Purge Date" pertaining to those accounts. In 2004, plaintiff Gillespie also

requested a file disclosure from Trans Union. The disclosure she received included records

pertaining to delinquent accounts with Direct Merchants and Sherman Acquisitions, but – like

Cinson's disclosure – did not include the "date of delinquency" or "Purge Date" pertaining to

those accounts.

Plaintiffs argue that Trans Union, by failing to disclose these dates, willfully violated the

FCRA. First, they claim that Trans Union violated § 1681(g)(a)(1) by not disclosing all

information in their files at the time of their requests. Second, they claim that Trans Union

violated § 1681e(a) by failing to "maintain reasonable procedures designed to avoid violations of

section 1681c." Section 1681c prohibits CRAs from making consumer reports that contain

information about "accounts placed for collection or charged to profit and loss which antedate

the report by more than seven years." 15 U.S.C. § 1681c(a)(4).

## Discussion

Entry of summary judgment is proper "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[1] Trans Union removes an account from a consumer's file six years and eleven months
after the account's Purge Date. See Def. L.R. 56.1 Stmt. ¶99

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### 1.    Section 1681g(a)(1)

 Before 1996, § 1681g(a)(1) required CRAs to provide consumers, upon request, with the nature and substance of the information in their consumer files. *See* S. Rep. No. 104-185, at 41 (1995). In 1996, Congress, having determined that the "nature and substance" language of § 1681g(a)(1) did not provide consumers with sufficient access to the information in their files, *see id.*, amended this section to require CRAs to provide consumers, upon request, with all of the information in their files. *See* 15 U.S.C. § 1681g(a)(1). Plaintiffs claim that Trans Union wilfully violated this provision by not disclosing the date of delinquency and Purge Date, which plaintiffs claim are part of their files. Trans Union responds that its practice does not violate § 1681g(a)(1), because the date of delinquency and Purge Date are not part of the consumer's file and are thus not subject to the statute's disclosure requirement. The Court must determine, therefore, the meaning of the word "file" in § 1681g(a)(1).[2]

We begin with the FCRA's language, which provides that "[e]very consumer reporting agency shall, upon request, and subject to section 1681h(a)(1) of this title, clearly and accurately disclose to the consumer: All information in the consumer's file at the time of the request." *Id.*

_____

[2] The parties have not cited, and the Court has not found, any case law addressing this question.

The word "file" is defined in § 1681a(g) as "all of the information on the consumer recorded and retained by a consumer reporting agency regardless of how the information is stored."

Trans Union contends that the date of delinquency is not part of a consumer's file because it is not retained within the meaning of § 1681a(g). Trans Union says that once the date of delinquency is received from a furnisher, it is used to calculate a Purge Date and is then removed from Trans Union's database. Plaintiffs concede that the date of delinquency is not retained as such but contend that it is retained in a different form as the Purge Date. For purposes of this motion, the Court assumes that Trans Union retains the date of delinquency. In addition, because there are no other distinctions between these dates that are relevant to the present inquiry, the Court refers to the dates collectively as the Purge Date.

Plaintiffs argue that the meaning of the word "file" in § 1681g(a)(1) includes the Purge Date, because § 1681a(g) says that a file is "*all* of the information on that consumer recorded and retained." 15 U.S.C. § 1681a(g) (emphasis added). Trans Union responds that the wording of § 1681g(a) as well as commentary adopted by the Federal Trade Commission (FTC) suggests that the definition of the word "file" in § 1681g(a)(1), includes only the information contained in a consumer's credit report. *See* 16 C.F.R. Pt. 600, App. § 603.

The parties do not discuss whether 16 C.F.R. Pt. 600, App. § 603 is a federal regulation, which carries the force of law, or an interpretive rule, which does not. *See Ala. Tissue Center of Univ. of Ala. Health Serv. Found., P.C. v. Sullivan*, 975 F.2d 373, 377 (7th Cir. 1992) ("[R]egulations," "substantive rules" or "legislative rules" are those which create law, usually implementary to an existing law; whereas interpretive rules are statements as to what the administrative officer thinks the statute or regulation means) (quoting *Indiana Dep't of Pub.*

*Welfare v. Sullivan,* 934 F.2d 853, 856 (7th Cir.1991)).  Nor do the parties discuss whether 16

C.F.R. Pt. 600, App. § 603 is entitled to deference under *Chevron U.S.A. Inc. v. Natural*

*Resources Defense Council, Inc.*, 467 U.S. 837, 843-44 (1984).

Regardless, the Court's independent research reflects that the FCRA does not empower

the FTC to pass regulations after traditional notice-and-comment procedures.  *See* 16 U.S.C. §

1681s(a); *Trans Union Corp. v. FTC*, 81 F.3d 228, 230-31 (D.C. Cir. 1996); *Estiverne v. Sak's*

*Fifth Ave.*, 9 F.3d 1171, 1173 (5th Cir. 1993).  Accordingly, 16 C.F.R. Pt. 600, App. § 603 is an

interpretive rule, *Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999); *Atchison, Topeka & Santa*

*Fe Ry. Co. v. Pena*, 44 F.3d 437, 442 (7th Cir. 1994), and, as such, it is entitled to something less

than so-called *Chevron* deference.  *See United States v. Mead Corp.*, 533 U.S. 218, 234 (2001);

*Atchison,* 44 F.3d at 442.  This means that the Court defers to the FTC's interpretation only to

the extent its reasoning is valid, thorough, and consistent with earlier and later pronouncements.

*See Atchison*, 44 F.3d at 442.

> 16 C.F.R. Pt. 600, App. § 603 reads as follows:
>
> Consumer reporting agencies are required to make disclosures of all information in their "files" to consumers upon request (section 609) and to follow reinvestigation procedures if the consumer disputes the completeness or accuracy of any item of information contained in his "file" (section 611).
>
> . . .
>
> The term "file" denotes all information on the consumer that is recorded and retained by a consumer reporting agency that might be furnished, or has been furnished, in a consumer report on that consumer.

Plaintiffs argue that the Court should not defer to the FTC's definition of the word "file",

because it is inconsistent with the clear language of the FCRA.  Specifically, plaintiffs maintain

that the FTC's definition, which says that a "file" is that information contained in a consumer

report, is inconsistent with § 1681a(g), which defines a file as "all of the information on that consumer recorded and retained" by a CRA. The Court agrees that there is some inconsistency between these two provisions. Nevertheless, this case concerns § 1681g(a), not § 1681a(g). If one carefully examines § 1681g(a)'s disclosure requirements, one readily determines that – despite the apparent inconsistency between the interpretive rule and § 1681a(g) – the meaning of the word "file" in § 1681g(a) is narrower than the definition found in § 1681a(g).

Section 1681g(a) begins with paragraph one, which requires CRAs to disclose all information in the consumer's file at the time of the consumer's request. Then, paragraphs three, four, and five go on to list three other types of information about consumers that CRAs must disclose as well: the name of each person that procured a consumer report; the dates, original payees, and amounts of any checks that form the basis of an adverse credit entry; and a record of all credit inquiries received by the CRA during the one-year period preceding the request that identified the consumer. If, as plaintiffs argue, the word "file" in paragraph one means "all information on the consumer recorded and retained" by a CRA, then paragraphs three, four, and five are rendered superfluous. These paragraphs would be nothing more than specific examples of information already described in paragraph one.

If, on the other hand, the word "file" in paragraph one means all information contained in a consumer report, as defined by 16 C.F.R. Pt. 600, App. § 603, then paragraphs three, four, and five retain independent significance, because the information described in those paragraphs is not routinely included in consumer reports. In fact, CRAs are expressly prohibited from including the information discussed in paragraph five in consumer reports. *See* 15 U.S.C. § 1681b(c)(3). Courts should avoid interpretations of statutes which render words superfluous.

*See Duncan v. Walker*, 533 U.S. 167, 174 (1995).  For this reason, regardless of whether the

interpretive rule in 16 C.F.R. Pt. 600, App. § 603 is entitled to deference, the Court concludes

that the rule articulates the correct definition of the word "file" in § 1681g(a)(1):  information

included in a consumer's report.

The Court's conclusion is buttressed by language in the Senate Committee Report

discussing the 1996 amendments to the FCRA.  *See* S. Rep. No. 104-185, at 41 (1995).  That

report indicates that Congress agreed with the position taken in FTC's interpretive rule:

"[S]ection 408 explicitly requires consumer reporting agencies to provide, upon request, all

information in the consumer's file.  The Committee intends this language to ensure that a

consumer will receive a copy of that *consumer's report*, rather than a summary of the

information contained therein."  *Id.* (emphasis added).  The quoted passage suggests that the

Senate, like the FTC, interpreted the word "file" to mean all information in a consumer's report,

not all information recorded and retained by a CRA.

Plaintiffs also argue that other parts of the FCRA demonstrate an overall intent to require

disclosure of information like the Purge Date.  Plaintiffs point out that the FCRA requires

furnishers to provide the date of delinquency to CRAs when submitting adverse credit

information so that CRAs can determine an account's obsolescence as defined by § 1681c.  See

15 U.S.C. § 1681s-2(a)(5)(A).  If CRAs are required to use this information, plaintiffs argue,

then the information must be a part of the consumer's file.  Plaintiffs also note that § 1681i

provides a mechanism for consumers to request reinvestigation of the information supplied by

furnishers and that this mechanism would be thwarted unless CRAs were required to disclose

dates of delinquency.  Plaintiffs maintain that without access to this information, consumers

cannot determine which accounts should be reinvestigated, because they cannot find out whether

accounts are obsolete.

The Court disagrees that if the definition of the word "file" includes only that information

contained in a consumer's report, there is a conflict or inconsistency between § 1681g(a)(1) and

§§ 1681s-2(a)(5)(A) and 1681i.  There is nothing inconsistent about Congress requiring

furnishers to provide CRAs with dates of delinquency along with adverse credit information, but

not requiring CRAs to provide those dates to consumers requesting their files.  There is also

nothing inconsistent about Congress giving consumers a right to contest information in their

files, but limiting those rights to information provided in consumer reports.

Plaintiffs also argue that the Purge Date is a part of a consumer's file, even as defined by

the FTC's interpretive rule, because Trans Union hypothetically could begin selling a consumer

report that includes the Purge Date.  See Def. Mem. at 7 n.7.  For this reason, plaintiffs contend,

the Purge date "might be furnished" in a consumer report.  *See* 16 C.F.R. Pt. 600, App. § 603.

The Court rejects this argument.  Any piece of information that the CRA possesses on a

consumer hypothetically could end up in a consumer report.  If the phrase "information . . . that

might be furnished, or has been furnished" meant any piece of information possessed by a CRA,

then the "might be furnished, or has been furnished" language in the interpretive rule would be

completely superfluous.  The interpretive rule would retain the same meaning if it defined file as

"all information on the consumer that is recorded or retained by the CRA."  Courts are to avoid

interpretations of agency regulations which render words superfluous.  *See Hercules Inc. v.*

*United States*, 516 U.S. 417, 429 (1996); *Jewett v. C.I.R.*, 455 U.S. 305, 316 (1982).  It is fair to

assume the same rule applies to an agency's interpretive rules.  Consequently, a more reasonable

understanding of the phrase "might be furnished or has been furnished" requires the plaintiffs to

offer some evidence – aside from the information's mere existence in a CRA's database – that

the CRA has included similar information in a consumer report in the past or that the CRA plans

to include such information in the future.  Plaintiffs have offered no such evidence.

Finally, plaintiffs argue that a non-binding FTC staff opinion letter provided to Trans

Union in 2000 suggests that information like the Purge Date is subject to disclosure under §

1681g(a)(1).  The Court rejects this argument as well.  The letter in question responded to Trans

Union's inquiry about whether, in an effort to fight identity theft, Trans Union could scramble or

truncate account and social security numbers when including them in § 1681g(a)(1) disclosures.

*See* Pl. Ex. 6.  The FTC said that this practice would violate the FCRA because CRAs are

required to clearly and accurately disclose all information in a file.  Social security and account

numbers – unlike Purge Dates – are ordinarily included in consumer reports.  For this reason, the

FTC staff opinion letter offered by plaintiffs does not address the issue presented here:  whether

information not included in consumer reports must nevertheless be disclosed under §

1681g(a)(1).

Because plaintiffs have not offered evidence from which a jury reasonably could find that

Trans Union failed to disclose information in their consumer files, the Court grants Trans

Union's motion for summary judgment on Count 1.

### 2.      Section 1681e(a)

In Count 2, plaintiffs allege that by failing to disclose the Purge Date of certain accounts

listed in their consumer reports, Trans Union did not maintain reasonable procedures to avoid

violations of §1681c.  Plaintiffs concede that their allegations in Count 2 involve the same legal

issue involved in a related case plaintiffs filed in this Court against another CRA, Equifax

Information Services, LLC. *See Gillespie v. Equifax Info. Svcs. LLC*, No. 05 C 138, 2006 WL

681059, *2 (N.D. Ill. March 9, 2006). The relevant issue is whether a CRA can be held liable

under § 1681e(a) without disclosing inaccurate or obsolete credit information to a third party. In

*Equifax*, the Court concluded, citing *Washington v. CSC Credit Svcs. Inc.*, 199 F.3d 263, 267

(5th Cir. 2000) and *Wantz v. Experian Info. Solutions.*, 386 F.3d 829, 834 (7th Cir. 2004), that

disclosure is a prerequisite to liability under § 1681e(a). Plaintiffs have not cited any legal

authority or factual distinction that demands a different result in this case. Accordingly, the

Court grants Trans Union's motion for summary judgment on Count 2.

### Conclusion

For the foregoing reasons, the Court grants Trans Union's motion for summary judgment

[docket no. 76]. The Clerk is directed to enter judgment in favor of the defendant. Plaintiffs'

motion for class certification is terminated as moot [docket no. 46]


_____
MATTHEW F. KENNELLY
United States District Judge

Date: May 15, 2006