**CERTIFIED COPY**

# In the
# United States Court of Appeals
## For the Seventh Circuit

FILED
APR - 9 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

No. 06-2576

HEATHER GILLESPIE and ANGELA CINSON,

*Plaintiffs-Appellants,*

v.

TRANS UNION CORPORATION, a Delaware corporation,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 8299—Matthew F. Kennelly, *Judge.*

ARGUED NOVEMBER 30, 2006—DECIDED MARCH 16, 2007

Before POSNER, KANNE, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* Heather Gillespie and Angela Cinson (who hoped to represent a class) appeal Judge Matthew F. Kennelly's grant of summary judgment in favor of the Trans Union Corporation on their claims alleging violations of the Fair Credit Reporting Act (FCRA). Today we resolve their appeal, which requires a short journey through an array of statutes (all from Title 15 of the code) with a numbering system (1681c, 1681c(c)(1), 1681g(a)(1), 1681a(g), and 1681i) that only a lawyer could love.

Trans Union, a consumer reporting agency (CRA), collects credit information and provides it to businesses in connection with credit transactions. In particular, Trans Union (like other CRAs) gathers and reports data it receives about delinquent accounts. And the reports it provides, if sprinkled with enough (or in some cases, any) negative information, guarantee that a person seeking credit will be turned away. Because this sort of situation could haunt a credit seeker forever, the FCRA sets a limit on how long CRAs can disclose negative information in a consumer report (generally, no longer than 7 years). 15 U.S.C. § 1681c. As a result, when Trans Union receives data about a delinquent account, that information must include a "date of delinquency," which is a date 180 days after any collection activity, charge to profit and loss, or similar action has occurred. § 1681c(c)(1). Trans Union uses the date to generate, for its internal purposes, what it calls a "purge date," that is a date when the information will be removed from the reports that it issues. Trans Union does not include the date of delinquency or the purge date in consumer reports that it sends to third parties. For our purposes, we will refer to the two dates collectively as the purge date.[1]

In 2004, Cinson and Gillespie asked Trans Union for their credit histories under § 1681g(a)(1), which states that "[e]very consumer reporting agency shall, upon request, . . . clearly and accurately disclose to the consumer: (1) All information in the consumer's file at the time of the request . . . ." In response to the requests, Trans Union gave them consumer reports that revealed delinquent account information but omitted any mention

---

[1] Although Trans Union asserts it does not retain the date of delinquency, we assume, drawing all reasonable inferences in favor of Gillespie and Cinson, that it keeps the date in its file.

of the purge date. Cinson and Gillespie argue that this omission violates the FCRA. The question on appeal is whether the term "file" in § 1681g(a)(1) encompasses everything in Trans Union's consumer file, or just material included in a consumer report issued to third parties.

We review a district court's entry of summary judgment *de novo*. Summary judgment is proper if no genuine issue of material fact exists and the nonmovant is entitled to judgment as a matter of law. We draw all factual inferences in favor of Cinson and Gillespie. *Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 475 (7th Cir. 2004); *Rogers v. City of Chicago*, 320 F.3d 748, 752 (7th Cir. 2003).

Cinson and Gillespie claim the word "file" in § 1681g(a)(1) includes the purge date because the broader definition of "file" from § 1681a(g) applies: "The term 'file' . . . means all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." Not so, says Trans Union—the clear wording plus the legislative history of § 1681g(a)(1) and the commentary adopted by the Federal Trade Commission, confirm that only the information included in a consumer's credit report must be disclosed. We recognize that these provisions are somewhat at odds. However, we think that Trans Union's argument must carry the day.

Section 1681g(a)'s paragraph 1, as we just noted, requires CRAs to disclose all information in the consumer's "file" at the time of the request. Subsequent paragraphs, however, list other types of information that must be revealed as well, including: the name of each person that received a consumer report; the date, original payees, and amounts of any checks that form the basis of an adverse credit entry; and a record of all credit inquiries during the one-year period before the consumer's

request. If, as Cinson and Gillespie argue, the word "file" in paragraph 1 means "all information on the consumer recorded and retained" by a CRA, then these additional paragraphs are unnecessary. On the other hand, if the word "file" in paragraph 1 has a narrower meaning, as urged by Trans Union, then these other subsections retain some semblance of relevancy. Because we try to avoid interpretations of statutes that render words, or other sections, superfluous, *Duncan v. Walker*, 533 U.S. 167, 174 (2001); *United States v. Chemetco, Inc.*, 274 F.3d 1154, 1160 (7th Cir. 2001), the plain language of § 1681g(a)(1) favors Trans Union.

For what it's worth, the FTC's commentary on § 1681g(a)(1) also limits the scope of the term "file" to material included in a consumer report: "The term 'file' denotes all information on the consumer that is recorded and retained by a consumer reporting agency *that might be furnished, or has been furnished, in a consumer report on that consumer.*" 16 C.F.R. pt. 600, app. § 603 (emphasis added). This agency interpretation, while not binding, supports Trans Union's argument. Cinson and Gillespie counter that the purge date is a proper part of a consumer report because the phrase "information . . . that might be furnished, or has been furnished" allows for the possibility that Trans Union could supply the date in the future.

This argument is not persuasive. A more reasonable view, as Judge Kennelly observed, would require some showing—aside from the existence of the purge date in its file—that Trans Union included similar information in a consumer report in the past or that it plans to do so in the future. No such showing has been made.

Language in the Senate Committee Report discussing the 1996 amendments to the FCRA also favors Trans Union. Before 1996, § 1681g(a)(1) required CRAs to provide

consumers, upon request, with the "nature and substance" of the information in their files. Congress amended the "nature and substance" language of § 1681g(a)(1) to make CRAs disclose "all of the information" in a consumer's file.

However, the Committee Report indicates that the amendment aimed to give consumers better access to complete copies of their consumer reports: "Section 408 explicitly requires consumer reporting agencies to provide, upon request, all information in the consumer's file. The Committee intends this language to ensure that a consumer will receive a copy of that *consumer's report*, rather than a summary of the information contained therein." S. Rep. No. 104-185, at 41 (1995) (emphasis added). While this legislative history is not dispositive, it suggests Congress wanted consumers to receive exactly what Cinson and Gillespie got from Trans Union—complete copies of their consumer reports, not their entire files in whatever form maintained by the CRA.

Finally, Cinson and Gillespie argue other parts of the FCRA show Congress meant to require CRAs to disclose more than the information in their consumer reports. They point, for example, to § 1681c, which (as we have discussed) requires creditors to provide the date of delinquency to CRAs along with delinquent account information; and to § 1681i, which allows consumers to request reinvestigation of certain information CRAs get from their customers. However, the fact that Congress requires creditors to give CRAs dates of delinquency but does not require that those dates be disclosed (or included in a consumer credit report) is of no great moment. Congress, it seems, chose to limit the right to contest information to material actually contained in consumer reports. And of course it was free to draw the line as it did.

The language of § 1681g(a)(1), the FTC's interpretive guideline, and the Senate Committee Report all support

Trans Union's argument that "file" means information included in a consumer report. We affirm the judgment of the district court.

A true Copy:

    Teste:

        _____
        *Clerk of the United States Court of*
        *Appeals for the Seventh Circuit*